# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WILLIAM D.,**[1] | Case No. 6:18-cv-38-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

Sherwood J. Reese, DREW L. JOHNSON, PC, 1700 Valley River Drive, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Thomas M. Elsberry, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family member.

William D. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. Because the Commissioner's decision is not based on the proper legal standards and the findings are not supported by substantial evidence, the decision is REVERSED and REMANDED for immediate calculation of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for SSI on July 24, 2013. Administrative Record ("AR") 18. He alleged disability beginning March 16, 2007, due to bipolar disorder, acid reflux, arthritis, Crohn's disease, and a back condition. AR 18, 65. Plaintiff was born in 1970 and was 36 years old on the alleged disability onset date. AR 65. Plaintiff has a high school education. AR 41. From 1997 to 2003, Plaintiff owned and operated a hair salon. From 2005 to 2008, Plaintiff worked for short periods as an art gallery manager, a real estate agent, the manager of a tuxedo rental company, the manager of a retail outlet store for skin and body care, and then, once again, operated his own hair salon. AR 42-43, 190.

The Commissioner initially denied Plaintiff's application on April 17, 2014, and again on reconsideration on November 26, 2014. AR 18. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 3, 2016. AR 35. At the hearing, the ALJ heard testimony from Plaintiff and vocational expert ("VE") Vernon Arnd. AR 35-63. The ALJ issued a decision on December 9, 2016, finding Plaintiff not disabled. AR 18-28.

Plaintiff petitioned the Appeals Council for review. AR 149-50. The Appeals Council denied his petition on November 16, 2017, at which date the ALJ's decision became the final decision of the Commissioner. AR 1-3. Plaintiff now seeks review in this Court.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 24, 2013, the application date. AR 20. At step two, the ALJ found that Plaintiff had the following severe impairments: "fibromyalgia, obesity, bipolar I disorder, panic disorder with agoraphobia, Attention Deficit Disorder (ADD), and chronic pain syndrome." *Id.*

The ALJ found that Plaintiff's status post kidney stone, mild carpal tunnel syndrome, gastric esophageal reflux disease, arthritis in the hip, status post laparoscopic cholecystectomy, and mild lumbar spine degenerative disc disease were non-severe. *Id.* The ALJ also concluded that there was a lack of objective evidence to substantiate the existence of Plaintiff's alleged knee injury as a medically determinable impairment. AR 20-21.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 21-23. The ALJ next assessed Plaintiff's RFC and found that Plaintiff could perform light work as defined in 20 C.F.R. 416.967(b), with certain limitations. AR 23. Specifically, the ALJ found that Plaintiff needs to use a cane at all times; is limited to standing or walking a total of four hours in an eight-hour workday with no limits on sitting; can only occasionally climb, balance, stoop, kneel, crouch and crawl; is limited to frequent reaching, handling, fingering, and feeling; cannot work around hazards; can understand, remember, and carry out simple, routine, repetitive tasks; and is limited to no more than occasional contact with the general public or coworkers. AR 23.

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work. AR 27. At step five, the ALJ relied on the VE's testimony to conclude that Plaintiff could perform jobs that exist in significant numbers in the national economy, including wire worker and electrical accessory assembler. AR 27-28. The ALJ thus found that Plaintiff was not disabled. AR 28-29.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; (B) improperly assessing the medical opinions of treating psychiatric mental health nurse practitioners ("PMHNPs")

Christine Menager and Elizabeth Churchill and treating physician Mark Lyon, M.D.; and

(C) improperly rejecting the lay testimony of Plaintiff's mother and Plaintiff's friend.

## A. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ improperly discounted his subjective symptom testimony. There is a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; [s]he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-

3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to

"credibility," clarifies that "subjective symptom evaluation is not an examination of an

individual's character," and requires the ALJ to consider all of the evidence in an individual's

record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The

Commissioner recommends that the ALJ examine "the entire case record, including the objective

medical evidence; an individual's statements about the intensity, persistence, and limiting effects

of symptoms; statements and other information provided by medical sources and other persons;

and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner

recommends assessing: (1) the claimant's statements made to the Commissioner, medical

providers, and others regarding the claimant's location, frequency and duration of symptoms, the

impact of the symptoms on daily living activities, and other methods used to alleviate symptoms;

(2) medical source opinions, statements, and medical reports regarding the claimant's history,

treatment, responses to treatment, prior work record, efforts to work, daily activities, and other

information concerning the intensity, persistence, and limiting effects of an

individual's symptoms; and (3) non-medical source statements, considering how consistent those

statements are with the claimant's statements about his or her symptoms and other evidence in

the file. *See id.* at *6-7. Because the ALJ issued her decision on December 14, 2016, SSR 16-3p

applies in this case.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons

for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may

not, however, make a negative credibility finding "solely because" the claimant's symptom

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d

at 883.

At the administrative hearing, Plaintiff testified that he suffers from pain caused by fibromyalgia and arthritis. AR 47. He reported that he takes Methadone and Norco and that it cuts his pain down from a ten to six or seven. AR 48. He reported that the most he can lift is three to five pounds, he can walk using a cane for five to six minutes at a time, he can stand for 20-25 minutes, and he can sit for 15 minutes. AR 46-47. He explained that he had a caregiver that cooked his meals, cleaned, helped him to the shower, helped him to the toilet, and helped him dress. AR 49. After the caregiver was fired, his mother assumed that role and was paid by the state for providing his care. AR 49-50. He reported that he has dyslexia, so it is difficult for him to read. AR 49. Plaintiff testified that having a lot of people around makes him panic. AR 51. He explained that he has panic attacks on a frequent basis, and the panic attacks can last from 10 minutes to two hours. AR 52-53. He testified that he had problems working for other people because in 1995 he was drugged and raped by his boss. AR 54. He reported that the trauma of that experience destroyed his life. AR 55. The ALJ discounted Plaintiff's testimony regarding his limitations for several reasons, each of which is addressed in turn.

### 1. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ found the "assistance requested in the contract [for Plaintiff's caregiver] is not consistent with the conservative care and treatment notes from Dr. Lyon." AR 24. The ALJ, however, failed to identify additional non-conservative treatment that was available to Plaintiff. "Because the ALJ did not specify what 'more aggressive treatment options [were] appropriate or available,' it would be illogical to discredit Plaintiff 'for failing to pursue non-conservative treatment options where none exist.'" *Cindy F. v. Berryhill*, 2019 WL 591451 at *7 (D. Or. Feb. 13, 2019) (quoting *Lapeirre–Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010)).

Although the ALJ noted that Plaintiff was not seeing a rheumatologist, the record reflects that Plaintiff was indeed treated by a rheumatologist who diagnosed fibromyalgia and osteoarthritis. AR 24, 295. Plaintiff wanted a referral to see a rheumatologist again, but Dr. Lyon's did not think a rheumatologist would discover anything new. AR 340.

Moreover, Plaintiff's treatment over the years included a variety of strong pain medications and muscle relaxers including Methocarbamol, Carisoprodol, Dilaudid, Elavil, Ibuprofen, Flexeril, Oxycodone, Norco, Diclofenac, Hydrocodone, and Methadone. AR 24-25, 273, 296, 344, 349, 351, 364, 367, 377, 408, 413, 419, 449. Indeed, Dr. Lyon opined that the mixture of Plaintiff's medications was "dangerous." AR 340. The dangerous combination of medications contradicts the ALJ's assertion that Plaintiff's treatment was conservative. Accordingly, Plaintiff's purported conservative treatment is not a clear and convincing reason for rejecting his testimony.

### 2. Inconsistent Statements

The ALJ found that Plaintiff's request for information regarding exercises and nutrition was not consistent with his allegations that he was unable to "dress and bathe himself due to his impairments." AR 24. Nevertheless, the fact that Plaintiff requested information regarding improving his nutrition does not mean that he was capable of doing the cooking for himself or

that he could dress and bathe himself. Additionally, the fact that a claimant engages in therapeutic exercises is not evidence that the claimant would be able to "concentrate on work despite the pain" or "engage in similar activity for a longer period." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Here, there is no evidence that Plaintiff actually engaged in physical therapy, only that he expressed an interest. Thus, Plaintiff's mere interest in learning about therapeutic exercises that might improve his impairments is not inconsistent with an inability to perform household chores or personal care.

The ALJ also found that Plaintiff's statement to Dr. Lyon that his pain level was three to six, was not consistent with his testimony that his pain is "constantly" a six. AR 24. Notably, Plaintiff did not testify that his pain was constantly a six, he stated that his medication helps get his pain down to a six or seven during the day. AR 48. Moreover, he rated his pain at three to six in April 2016 and he rated his pain at six or seven in August 2016. AR 48, 446. The fact that Plaintiff's pain levels varied over time does not constitute inconsistent statements. Indeed, Dr. Lyon noted that Plaintiff's condition "waxed and waned over the years." AR 431. Therefore, Plaintiff's alleged inconsistent statements do not constitute a clear and convincing reason for discounting his testimony.

### 3. Work History

The ALJ found that Plaintiff worked only "sporadically" and concluded that Plaintiff's work history raised questions as to whether Plaintiff's "continuing unemployment was actually due to medical impairments." AR 24. Nevertheless, on the very next page, the ALJ found that Plaintiff "had a long work history as a hairdresser until 2007." AR 25. As such, this reason is not clear and convincing because it is internally inconsistent.

Moreover, the ALJ's finding that Plaintiff's long work history was contradicted by his testimony—that he has never been able to hold down a job—mischaracterizes Plaintiff's

statements. Plaintiff reported that he was never able to hold a job because of the incident in 1995 in which his boss drugged and raped him. AR 54-55. He explained that ever since that happened, he has never been able to work for someone else. *Id.* The fact that he was able to work as a self-employed hair dresser for seven years is entirely consistent with his testimony that he was unable to hold down a job working for someone else.

### 4. Lack of Medical Evidence

The ALJ found that in terms of "chronic pain, medical evidence of record is not consistent [with Plaintiff's] allegations." AR 24. While a lack of medical evidence cannot serve as the sole reason for discrediting plaintiff's testimony, "it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. The ALJ cited a treatment note in which Dr. Lyon opined that Plaintiff was doing well and his affect was "okay." AR 24, 442. The ALJ relied on a number of other notes from that same appointment, including Dr. Lyon's observation that the examination of Plaintiff's shoulder was inconsistent. AR 24, 442. Although Plaintiff showed tenderness in the shoulder area, there was no pain to resisted motion and there was no evidence of any recent injury to the shoulder. AR 442. Nevertheless, Dr. Lyon ultimately concluded Plaintiff was suffering from "myofascial pain related to flare up of his fibromyalgia." AR 442.

The ALJ also relied on the fact that at one point, Plaintiff did not pick up his Hydrocodone prescription for breakthrough pain right away. However, one month after that, the record reflects that Plaintiff's pain level was at a seven out of ten and Plaintiff was taking Methadone, Norco, Soma, and Diclofenac. AR 295-96. Moreover, Dr. Lyon noted that Plaintiff had chronic pain issues with "significant baseline narcotic needs," Plaintiff was diagnosed with fibromyalgia, and he frequently reported back pain and joint pain. AR 273-74, 277, 285-86, 291, 295, 300, 348, 363-64, 374, 379, 389-90, 437-38, 440, 443, 445-46, 449-50.

Furthermore, the ALJ failed to evaluate Plaintiff's fibromyalgia under SSR 12-2p. Imaging evidence, surgery, and neurological findings are not required in order to establish the existence of fibromyalgia under SSR 12-2p. Moreover, the Ninth Circuit has made clear that diagnosing fibromyalgia "does not rely on X-rays or MRIs." *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). A tender point exam showing at least 11 positive tender points is one form of objective evidence of fibromyalgia. *See* SSR 12-2p. Dr. Welding performed a tender point exam in which Plaintiff "was evaluated and found to have tenderness at 15/18 tender points." AR 299. Therefore, Plaintiff's allegations of chronic fibromyalgia pain are supported by objective evidence in the medical record.

The ALJ also found that Plaintiff's alleged limitations due to his mental impairments were not consistent with the medical evidence of record. The ALJ noted that Plaintiff was diagnosed with Bipolar disorder and childhood attention deficit hyperactivity disorder. AR 25. The record reflects that Plaintiff was also diagnosed with panic disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), depression, histrionic personality traits, and ADD in adulthood. AR 26, 71, 75, 88. 305, 404-05, 409. The ALJ found that it "was noted that the claimant was alert and cooperative; normal mood and affect; normal attention span and concentration; and oriented to time, place, and person." AR 25. Although these findings were made at two urology appointments, during his mental health appointments, Plaintiff's mood was often observed to be anxious or labile and his affect was often flat or depressed. AR 274, 292, 327, 329, 331, 333, 335, 401-02, 404, 406, 437. Moreover, the mental health specialists that examined and treated Plaintiff concluded that his concentration was impaired. AR 304, 392, 409, 433. The ALJ noted that Plaintiff was prescribed Adderall and Wellbutrin, but the record reflects that Plaintiff was also prescribed Latuda, Xanax, Lamictal, Zoloft, Depakote, Lamotrigine,

Klonopin, Prazosin, Lexapro, Divalproex, Lurasidone, and was often taking as many as four or five different psychiatric medications at any given time. AR 249, 273, 317, 329, 333, 337, 349, 408. Therefore, Plaintiff's alleged mental impairments are supported by the record and lack of medical evidence is not a clear and convincing reason to discount his testimony on these issues.

### 5. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months

or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See*

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ found that Plaintiff's ability to read, listen to music, spend time on the

computer, and spend time writing children's books showed "excellent concentration." AR 25.

The ALJ's assertion that Plaintiff had excellent concentration is not supported by substantial

evidence. Plaintiff's ability to engage in leisure activities such as reading, listening to music, or

spending time on the computer do not demonstrate that he had excellent concentration.

Furthermore, the record gives no indication of how much time Plaintiff was able to spend writing

children's books. His mother noted that it was his hobby, but he struggled to concentrate while

doing it. AR 216. Additionally, the medical evidence reflects that Plaintiff's concentration was

impaired. Dr. Prescott, whose opinion the ALJ afforded great weight, observed that Plaintiff's

concentration was impaired. AR 304. Both PMHNP Churchill and PMHNP Menager opined that

Plaintiff was severely limited in his ability to maintain concentration and attention. AR 392, 433.

Moreover, the ALJ's finding that Plaintiff had excellent concentration appears to be in tension

with the ALJ's finding that Plaintiff's ADD was a severe impairment. AR 20.

The ALJ additionally found that Plaintiff's ability to write a children's book was

inconsistent with his testimony that he did not do any household chores and does not run errands.

AR 25-26. First, the fact that Plaintiff worked on writing a children's book does not show that he

did household chores or ran errands. Second, to the extent that the ALJ found plaintiff's ability to

write a children's book indicated that Plaintiff was *capable* of doing household chores, such

reasoning is also unconvincing. Notably, writing is a sedentary activity whereas performing

chores and running errands requires a greater level of physical exertion. Moreover, there is

nothing in the record that indicates how much time Plaintiff was able to dedicate to writing.

Despite Plaintiff's claim that he published a children's book in 2013, the record reflects that he did not earn any money as a result of the publication. AR 160-61. Also, as discussed above, Plaintiff's mother indicated that writing was merely a hobby. AR 216. Thus, Plaintiff's ability to spend time writing a children's book is not a clear and convincing reasons for discounting his testimony.

Furthermore, a claimant's activities of daily living can be used to discredit a claimant in two ways: either the activities can contradict the claimant's other testimony, or the activities can meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639. Here, the ALJ found that the activities contradicted Plaintiff's testimony, but failed to identify which testimony was contradicted. In order to properly discredit a claimant on the basis that his activities contradict his testimony, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918). Therefore, the ALJ's finding was insufficient as a matter of law.

### 6. Inconsistency with Dr. Wendling's Opinion

The ALJ found that Plaintiff's allegations were not consistent with the objective findings in Dr. Wendling's report. AR 25. The ALJ specifically cited Dr. Wendling's conclusion that Plaintiff's back brace and bilateral wrist braces were not medically necessary. The Court notes that Dr. Wendling, however, did conclude that Plaintiff's cane was medically necessary. AR 298. Dr. Wendling also acknowledged that the assistive devices "have all been given or prescribed to [Plaintiff] by his primary care physician." AR 298. Furthermore, in discussing Plaintiff's various assistive devices, Dr. Wendling reported he was "not able to observe ambulation without these devices and [it was] not felt to be safe [for Plaintiff] to try and ambulate without them." *Id.* Accordingly, despite determining that the braces were not medically necessary, Dr. Wendling nonetheless concluded that it would not be safe for Plaintiff to attempt to walk without them.

Moreover, the devices were provided by Plaintiff's primary care treatment provider. As such, Plaintiff's use of the braces is not a clear and convincing reason for discounting his symptom testimony.[2]

The ALJ also cited Dr. Wendling's observations that Plaintiff exhibited poor effort during the motor strength examination. Dr. Wendling noted that during "the examination there [was] evidence of poor effort and inconsistencies as the claimant [was] very focused on his limitations and the things which he cannot do." AR 297. Nevertheless, Dr. Wendling also observed that Plaintiff had a "significant amount of instability in his gait even with the use of [a] cane." AR 300. Additionally, Dr. Wendling' examination of Plaintiff revealed "tenderness at 15/18 tender points tested for fibromyalgia." AR 299.

Finally, the ALJ failed to explain what testimony was inconsistent with Dr. Wendling's report. To properly discredit a claimant, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918). Therefore, the alleged inconsistencies between Plaintiff's testimony and Dr. Wendling's report do not constitute clear and convincing reasons for rejecting Plaintiff's symptom testimony.

### 7. Inconsistency with Dr. Prescott's Opinion

The ALJ also found that Plaintiff's allegations were not consistent with Dr. Prescott's report. AR 25. The ALJ relied on Dr. Prescott's observations that Plaintiff's affect was very full with histrionic characteristics during the first half of the interview. *Id.* Dr. Prescott, however,

---

[2] Dr. Wendling also noted Plaintiff's report that "at one point he was in a wheelchair." AR 300. The record does not indicate at what point Plaintiff was using a wheelchair and Dr. Wendling did not offer an opinion as to whether Plaintiff's previous wheelchair use was medically necessary.

also noted that Plaintiff "reported depression symptoms and appeared credible in his report of depressive episodes." AR 304. The results of the PHQ-9 evaluation indicated that Plaintiff had severe depression. *Id.* The doctor also observed that Plaintiff "showed impairment with short term memory" and that Plaintiff's concentration was somewhat impaired. *Id.* Ultimately, Dr. Prescott diagnosed bipolar disorder and panic disorder with agoraphobia. AR 305. As such, it is not clear how Dr. Prescott's observation about Plaintiff's histrionics during part of the interview was inconsistent with Plaintiff's testimony.[3] Moreover, Dr. Alvord diagnosed Plaintiff with histrionic personality traits, indicating that Plaintiff's histrionics resulted from his mental impairments. AR 71. Therefore, the purported inconsistencies between Plaintiff's testimony and Dr. Prescott's opinion do not constitute clear and convincing reasons for discounting Plaintiff's testimony.

**B. Medical Opinion Evidence**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling

---

[3] The ALJ also discussed the activities of daily living that Plaintiff reported to Dr. Prescott, including his history as a hairdresser and his hobby of writing children's books. As discussed above, neither of these activities constituted a clear and convincing reason for discounting Plaintiff's testimony.

weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not

contradicted by the opinion of another physician can be rejected only for "clear and convincing"

reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's

opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and

legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining

physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the

opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for

rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502,

506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another

physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the

examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may

reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating

physician when he gives specific, legitimate reasons for doing so, and those reasons are

supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995),

as amended (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti*, 533 F.3d at 1040; *Andrews*, 53 F.3d at 1042-43. An ALJ errs by

rejecting or assigning minimal weight to a medical opinion "while doing nothing more than

ignoring it, asserting without explanation that another medical opinion is more persuasive, or

criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### 1. PMHNP Menager and PMHNP Churchill

Evidence from an acceptable medical source is used to establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1521. Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502. Evidence from "other sources," including, but not limited to, "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, [and] therapists," may also be used to show the severity of a claimant's impairments and how they affect his ability to work. SSR 06-03p at *2. In order to reject evidence from "other sources," the ALJ must give germane reasons for doing so. *Molina*, 674 F.3d at 1111. Because PMHNP Menager and

PMHNP Churchill are nurse practitioners, they are considered "other sources." 20 C.F.R. § 404.1502.

The ALJ gave the treating opinions of both nurse practitioners "no weight," finding that the medical evidence of record "contains very minimal treatment notes from this source." AR 27. Although the ALJ need only provide germane reasons for rejecting the opinion of an "other source," the ALJ's reasons must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Here, the ALJ's reason was insufficient because it was vague and ambiguous. Notably, it is not clear whether the ALJ found that the number of treatment notes was minimal or that there was minimal information within each of the nurse practitioner's treatment notes. In either case, the ALJ's reasoning was not supported by substantial evidence. PMHNP Menager treated Plaintiff nine times over the course of a nine-month period and PMHNP Churchill treated Plaintiff four times over the course of a subsequent nine-month period. A finding that those treatment histories were insufficient would be inconsistent with the ALJ's finding that the opinion of Dr. Prescott—who saw Plaintiff only once and never treated him—was entitled to great weight. *See* AR 26, 302-05.

Dr. Prescott authored a four-page report, which consisted of Plaintiff's medical history and subjective report, a mental status exam, and the doctor's assessment. *See* AR 302-05. When PMHNP Churchill initiated care of Plaintiff she authored a similarly structured four-page report and subsequently evaluated and treated Plaintiff on three other occasions. *See* AR 399-402, 407-10. Moreover, PMHNP Menager's treatment notes documented her examinations, assessments, and treatment of Plaintiff on nine separate occasions. Therefore, the purportedly "minimal" treatment notes were more comprehensive than the report provided by Dr. Prescott, to which the ALJ gave great weight.

The Commissioner argues that the ALJ gave greater weight to Dr. Prescott's opinion and that constitutes a germane reason for rejecting the opinions of PMHNP Menager and PMHNP Churchill. The Commissioner also asserts that the ALJ properly rejected the opinions of both nurse practitioners because the ALJ found that Plaintiff's allegations were inconsistent with Dr. Prescott's report.

The Commissioner's argument fails for several reasons. First, the Commissioner relies on an unpublished Ninth Circuit opinion, *Porter v. Astrue*, 403 F. App'x 226 (9th Cir. 2010), which is distinguishable. In *Porter*, the court held that the ALJ had properly rejected the opinion of a physician's assistant because the ALJ found that opinion was inconsistent with the opinions of plaintiff's doctors. *Id.* at 228. Here, the ALJ did not make a finding that Dr. Prescott's opinion was inconsistent with the opinions of either of the nurse practitioners. Second, as discussed above, the purported inconsistencies between Plaintiff's allegations and Dr. Prescott's report did not constitute a clear and convincing reason for rejecting Plaintiff's testimony. Third, even if those purported inconsistencies were sufficient to discount Plaintiff's testimony, inconsistencies between Plaintiff's allegations and Dr. Prescott's report would not be a germane reason for rejecting the opinions of PMHNP Menager or PMHNP Churchill. Fourth, the Commissioner did not identify any inconsistencies between the opinions of Dr. Prescott and the two nurse practitioners. Fifth, even if the Commissioner had identified any inconsistencies, that would constitute an impermissible *post hoc* rationalization because the ALJ did not identify such inconsistencies. *Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been

thinking."). Accordingly, purported inconsistencies with Dr. Prescott's opinion does not provide a permissible basis for rejecting the opinions of PMHNP Menager or PMHNP Churchill.

## 2. Dr. Lyon

The ALJ gave Dr. Lyon's opinion no weight. AR 26. The ALJ found that Dr. Lyon's conclusions that Plaintiff was unable to hold a job and could not lift or carry were not supported by the treatment records. *Id.* The ALJ asserted that the treatment records reflect that Plaintiff was treated conservatively and his symptoms were controlled by medication. *Id.*

Despite the ALJ's conclusion that Plaintiff's treatment was conservative, as discussed above, the record reflects that Plaintiff was taking an ever-changing cocktail of powerful pain medications and muscle relaxers and Dr. Lyon opined that the mixture of Plaintiff's medications was "dangerous." AR 24-25, 273, 296, 340, 349, 364, 367, 377, 408, 413, 419, 449. Indeed, the risks of combining his medications at one point included death. AR 364. The ALJ failed to explain how Plaintiff's treatment was conservative and given that Plaintiff was taking a "dangerous" combination of medications it does not appear that Plaintiff's treatment was conservative. Additionally, the ALJ failed to identify additional non-conservative treatment that was available to Plaintiff. *See Lapeirre-Gutt,* 382 F. App'x at 664 ("A claimant cannot be discredited for failing to pursue nonconservative treatment options where none exist.").

The ALJ found that Plaintiff's symptoms were controlled by medication; however, the ALJ failed to cite specific evidence in the record to support that assertion. AR 26. The record reflects that Plaintiff, at one point, reported that he got 70% relief from his medications, but his pain levels remained between three and six. AR 446. At other times he reported that his pain level ranged between six and ten. AR 295, 361, 363, 366, 379. In 2012, Dr. Lyon opined that it was "clear that [Plaintiff was] not able to do very much because of [his] pain." AR 379. In 2014, Dr. Lyon observed that Plaintiff was "overwhelmed by his chronic pain issues" and in 2015,

Plaintiff was treated for chronic pain and Dr. Lyon noted that it was "getting worse than ever." AR 340, 438.

In June 2016, Dr. Lyon explained that Plaintiff could not lift or carry because his grips were weak "due to pain but not true muscular weakness." AR 431. The Commissioner argues that the 2016 opinion was inconsistent with Dr. Lyon's previous assessment in October 2012 that Plaintiff could lift 10 pounds occasionally. The fact that the doctor determined that Plaintiff's lifting abilities decreased over the course of four years, however, is not necessarily an inconsistency. In fact, such a decrease is consistent with Dr. Lyon's assessment that Plaintiff's symptoms "waxed and waned over the years." AR 431. Moreover, in 2015, Dr. Lyon's observed that Plaintiff's condition was worsening and that his fibromyalgia pain had become debilitating. AR 438. Accordingly, Dr. Lyon's conclusion that by 2016 Plaintiff was unable to lift or carry due to pain was supported by the treatment notes.

The Commissioner also argues that that the ALJ relied on Dr. Wendling's opinion that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. Although the ALJ discussed Dr. Wendling's findings in the context of Plaintiff's subjective symptom testimony, the ALJ did not rely on Dr. Wendling's findings to reject Dr. Lyon's opinion. As such, the Commissioner's rationale is an impermissible *post hoc* argument.[4] *Bray*, 554 F.3d at 1225. The Court also notes that Dr. Lyon was a treating physician and Dr. Wendling was an examining physician and in general, a treating physician's opinion carries more weight than an examining physician's opinion. *Holohan*, 246 F.3d at 1202. Furthermore, Dr. Wendling opined that Plaintiff

---

[4] The Commissioner also argues that the ALJ's finding was supported by Dr. Lyon's own treatment notes, in which he opined that Plaintiff was disabling himself by spending so much time in bed and that Plaintiff was "self-disabled." This, however, was another *post hoc* argument. *Bray*, 554 F.3d at 1225.

could lift 20 pounds in 2014 and Dr. Lyon opined that Plaintiff could not lift or carry in 2016. AR 300, 431. As discussed above, Plaintiff's condition waxed and waned, and the record indicates that his condition was worsening. AR 431, 438.

The ALJ gave Dr. Lyon's opinion that Plaintiff was disabled little weight, noting that it is an issue reserved to the Commissioner. AR 26. While true that the ultimate issue of disability is reserved to the Commissioner, "an ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Holohan*, 246 F. 3d at 1202-03). Therefore, the fact that Dr. Lyon provided an opinion on the ultimate issue of disability, is not itself a sufficient reason for rejecting the opinion.

The Commissioner argues that Dr. Lyon's opinions were based primarily on Plaintiff's subjective reporting; however, this argument is *post hoc*, and, as discussed previously, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout*, 454 F.3d at 1054 (citations omitted). Therefore, the ALJ improperly rejected Dr. Lyon's opinion.

## C. Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores uncontradicted lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ found that the there was "not any basis" to afford the lay witness opinions of Plaintiff's mother and Plaintiff's friend "more than slight, if any, weight." AR 27. The ALJ found that the evidence as a whole contradicted the testimony of both lay witnesses. Nevertheless, the ALJ's reasons for rejecting lay-witness testimony must be "specific," and this reason was vague. *Stout*, 454 F.3d at 1054.

The ALJ did, however, provide two specific reasons for rejecting the lay witness testimony. The ALJ relied on a 2016 treatment note that stated Plaintiff had no unusual pain behavior and was using a cane to get around. AR 27. It is unclear how the fact that Plaintiff was using a cane and had no unusual pain behavior at a single appointment is inconsistent with the lay testimony of either Plaintiff's mother or Plaintiff's friend. Moreover, at the appointment cited by the ALJ, Dr. Lyon assessed chronic multifactorial pain including arthritis, degenerative joint

disease, and fibromyalgia. AR 450. The doctor also noted that Plaintiff was still taking a combination of strong pain medications, including Methadone and Norco. AR 340, 449-50. Therefore, the treatment notes from that appointment do not constitute a germane reason for discounting the lay witness testimony of Plaintiff's mother and Plaintiff's friend.

The ALJ also found that Plaintiff's ability to spend time on the computer and write children's books showed excellent concentration. AR 27. As discussed above, the ALJ's finding that Plaintiff had "excellent concentration" was not supported by substantial evidence. Therefore, that finding was not a sufficient basis for rejecting the testimony of Plaintiff's mother and Plaintiff's friend. Accordingly, the ALJ erred in rejecting the testimony of both lay witnesses.

The error in rejecting Plaintiff's friend's testimony, however, was harmless because Plaintiff's friend did not provide any description of Plaintiff's activities or symptoms, noting only that his health had declined over the years and he was reluctant to leave the house. AR 264. Moreover, she acknowledged that she only sees Plaintiff "maybe twice a year." AR 264. Because the friend rarely interacted with Plaintiff and her testimony did not discuss Plaintiff's activities, it lacks evidentiary value. *See Crook v. Colvin*, 2016 WL 593567 at *6 (D. Or. Feb. 12, 2016) (citing *Dodrill*, 12 F.3d at 918-19) ("Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition."). Moreover, the only specific symptom that Plaintiff's friend discussed was Plaintiff's reluctance to leave the home when she invited him to dinner. AR 264. At most, her testimony provides additional evidence of Plaintiff's agoraphobia; however, the ALJ already found that Plaintiff's panic disorder with agoraphobia was a severe impairment and accounted for his social difficulties in the RFC. AR 20, 23. Accordingly, the ALJ's erroneous rejection of

Plaintiff's friend's testimony was harmless. *See Stout*. 454 F.3d at 1055 (noting that harmless error exists if "the mistake was . . . irrelevant to the ALJ's ultimate disability conclusion").

## D. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, the first requisite is met. As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting evidence and her decision contained errors of law. To determine

whether the record is fully developed, the court looks to whether there are "*significant factual conflicts* in the record." *Treichler*, 775 F.3d at 1104 (emphasis added). There is conflicting evidence with regard to Plaintiff's physical impairments. While concluding that Plaintiff was disabled due to his fibromyalgia, degenerative joint disease, and osteoarthritis, Dr. Lyon also opined that Plaintiff was self-disabled. AR 438, 443-44, 451. Specifically, Dr. Lyon observed that Plaintiff has "essentially disabled himself by spending large amounts of time in bed and of course, it makes him worse to do this." AR 438. Moreover, Dr. Lyon concluded that Plaintiff cannot sit for more than 15 minutes at a time whereas Dr. Wendling determined that Plaintiff had no limitations on the amount of time he could remain sitting. AR 300, 431.

Despite the apparent conflicts with regard to Dr. Lyon's assessment of Plaintiff's physical impairments, there are no significant conflicts regarding Plaintiff's mental impairments. Plaintiff was diagnosed with bipolar disorder, anxiety disorder, panic disorder with agoraphobia, ADD, PTSD, and depression. AR 71, 305, 404-05, 409. Plaintiff often presented as anxious and labile. AR 327, 329, 331, 333, 401, 404-05. At times, Plaintiff was observed to be paranoid. AR 405-06. PMHNP Churchill assessed that Plaintiff's memory, concentration, and attention were impaired. AR 409. She explained that his anxiety and mood lability interfered with his ability to sustain attention and concentration. AR 435. PMHNP Churchill also concluded that Plaintiff's ability to complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods was severely limited. AR 434. PMHNP Menager concluded that Plaintiff was severely impaired in his ability to maintain concentration and attention and in his ability maintain regular attendance. AR 392. She also opined that Plaintiff was severely limited in his ability to complete a normal workday without interruption from psychologically based symptoms. AR 393.

Although the opinions of PMHNP Menager and PMHNP Churchill were inconsistent with the opinions of non-examining physicians Dr. Hennings and Dr. Boyd, the ALJ rejected the opinions of both non-examining doctors and neither party challenges that finding. AR 26. Moreover, the finding of Dr. Boyd and Dr. Hennings that Plaintiff had no severe mental impairments is not supported by substantial evidence given that every mental health specialist who treated or examined Plaintiff diagnosed him with some combination of bipolar disorder, panic disorder, PTSD, depression, and ADD. AR 26, 71, 75, 88. 305, 404-05, 409.

Additionally, all of the treating or examining specialists identified significant functional limitations. *See* AR 305 (Dr. Prescott concluding that Plaintiff would be unable to manage money and observing that he showed restriction of his activities of daily living); AR 434 (PMHNP Churchill concluding that Plaintiff could not complete a normal workday); AR 392 (PMHNP Menager concluding that Plaintiff would not be able to maintain regular attendance). Furthermore, Plaintiff testified that he has panic attacks on a frequent basis, which can last from 10 minutes to two hours. AR 52-53. The record also reflects that Plaintiff was consistently prescribed some combination of the following psychiatric medications: Latuda, Wellbutrin, Xanax, Adderall, Lamictal, Zoloft, Depakote, Lamotrigine, Klonopin, Prazosin, Lexapro, Divalproex, Lurasidone, AR 249, 273, 317, 329, 333, 337, 349, 408. Plaintiff was generally taking three or four different psychiatric medications at any given time, and sometimes was taking as many as five. *Id.* Therefore, the opinions of Dr. Hennings and Dr. Boyd—which were rejected by the ALJ and were not supported by substantial evidence—do not present a significant conflict. *See Fulsaas v. Berryhill*, 2018 WL 2091357 at \*11, (D. Or. Mar. 22, 2018), *findings and recommendation adopted*, 2018 WL 2090475 (D. Or. May 4, 2018) (holding that an opinion

that was rejected by the ALJ and was not supported by substantial evidence did not constitute a significant factual conflict).

As discussed above, despite suggesting that Dr. Prescott's opinion contradicted the assessments of PMHNP Menager and PMHNP Churchill, the Commissioner failed to identify any inconsistencies. Although Dr. Prescott did not assess functional limitations, her opinion largely supports the conclusions of both PMHNP Menager and PMHNP Churchill. Notably, Dr. Prescott observed that Plaintiff showed impaired concentration and short-term memory; and despite finding that Plaintiff exhibited histrionic characteristics during the first half of the interview, she concluded that he "appeared credible in his report of depressive episodes." AR 304. Dr. Prescott observed that Plaintiff showed restriction of his activities of daily living, noting that he does not do household chores and opining that Plaintiff did "not appear able to manage money and has a long history of reckless spending." AR 305. Dr. Prescott diagnosed Plaintiff with bipolar disorder and panic disorder with agoraphobia. *Id.* Indeed, her opinion appears to be consistent with the opinions of PMHNP Menager and PMHNP Churchill. Accordingly, Dr. Prescott's opinion does not present a significant factual conflict on these issues. As such, the second requisite is met with respect to Plaintiff's mental impairments.

As to the third requisite of the credit as true analysis, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled based on PMHNP Menager's and PMHNP Churchill's conclusions that Plaintiff would be unable to maintain regular attendance, maintain concentration and attention, or complete a normal workday without interruptions from psychologically-based symptoms. These findings demonstrate that Plaintiff would not be able to sustain work activities on a "regular and continuing basis." SSR 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work

schedule."). Therefore, regardless of the apparent conflicts regarding Plaintiff's physical impairments, it is clear from the record that Plaintiff's mental impairments are disabling. *See Fulsaas*, 2018 WL 2091357 at *10-11 (holding that despite apparent conflicts regarding the plaintiff's physical impairments, his mental impairments were sufficiently disabling).

When each of the credit as true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled." *Revels*, 874 F.3d at 668 n.8 (citing *Garrison*, 759 F.3d at 1021). This case is not one of those "rare instances."

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge